RONALD GERALD DALRYMPLE,

      Plaintiff,

v.                                 Case No: 2:16-cv-295-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff Ronald Gerald Dalrymple appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability and disability insurance benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the Court recommends that the decision of the Commissioner be affirmed.

## I.    Issues on Appeal[2]

Plaintiff raises four issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly accorded little weight to the opinions of Plaintiff's treating

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

physician, Kenneth Galang, M.D.; (2) whether the ALJ applied the proper legal standards in finding Plaintiff could perform his past relevant work; (3) whether substantial evidence supports the ALJ's finding that there are other jobs available in significant numbers in the national economy Plaintiff can perform; and (4) whether the ALJ properly evaluated Plaintiff's credibility concerning his allegations of pain and limitations.

## II.    Procedural History and Summary of the ALJ Decision

Plaintiff, age 64 at the time of the administrative hearing, has a Ph.D. in psychology and past relevant work experience as a psychologist and college professor. Tr. 88, 267, 277.    On October 31, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning November 17, 2010 due to three herniated discs in his back, abnormalities at L3-L4 and L-5-S1, sciatica and chronic pain.    Tr. 210-13, 276.    The Commissioner denied Plaintiff's application initially and upon reconsideration.    Tr. 167-71, 175-79.    Plaintiff requested and received a hearing, which was held before ALJ Maria C. Northington on June 11, 2014.    Tr. 56-105.    Plaintiff was represented by counsel during the hearing.    *Id.*    Plaintiff and vocational expert ("VE") Donna Taylor testified at the hearing.    *Id.*

On October 2, 2014, the ALJ issued a decision finding Plaintiff not disabled from November 17, 2010 through the date of the decision.    Tr. 38-50.    At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, and had not engaged in substantial gainful

activity since November 17, 2010, the alleged onset date ("AOD"). Tr. 40.[3] At step two, the ALJ determined that while Plaintiff has the medically determinable impairments of mild lumbar spondylosis and right patellar degenerative joint disease, he has no severe impairments, that is, an impairment or combination of impairments that has significantly or is expected to significantly limit his ability to perform basic work-related activities for twelve consecutive months. Tr. 41, citing 20 C.F.R. § 404.1521 *et seq.* Although the ALJ could have stopped her analysis there and made a finding that Plaintiff was not disabled, she continued with the remaining steps in the sequential evaluation process. She found that "[a]ssuming arguendo that [Plaintiff's] lumbar condition was considered a severe impairment for sequential evaluation purposes," Plaintiff would retain the residual functional capacity ("RFC to"):

> perform light work [4] as defined in 20 CFR 404.1567(b) such that [Plaintiff] has the ability to occasionally lift and/or carry up to 20 pounds

---

[3] In making this latter determination, the ALJ discussed that Plaintiff maintains a part-time psychology practice in which he sees no more than five to seven patients per week, works no more than a few hours per day and draws no salary. Tr. 40. His psychology license issued in October 2012 was valid through May 2014. *Id.* He also maintains a website on which the ALJ noted he "actively solicits for business," but Plaintiff testified he is does not receive clients from the website nor actively solicit new patients. *Id.*, Tr. 67-69. Although the ALJ found these facts to be "facial[ly] implausib[le]," she gave Plaintiff the "benefit of all doubt" and concluded Plaintiff had not engaged in substantial gainful activity since the AOD. Tr. 40-41. The ALJ further commented, however, that Plaintiff's "post-alleged onset date work activity is more consistent with the ultimate findings of this decision than with an allegation of work-precluding debility." Tr. 41.

[4] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do

as defined in the Dictionary of Occupational Titles (D.O.T.) and regulations, as well as, lift carry 10 pounds frequently. This includes sedentary work as defined in [the] D.O.T. and regulations. [Plaintiff] has no limitations regarding sitting. He is capable of standing and/or walking for up to six hours in an eight-hour workday. In the course of work, he should be allowed the ability to optionally alternate between sitting and standing every thirty to sixty minutes, but such would not cause him to be off-task. He is capable of performing all postural functions with the exception of no crawling, no kneeling, and no climbing of ladders, ropes, or scaffolds. He has no mental limitations as admitted at the hearing. [Plaintiff] is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week with normal breaks being sufficient.

Tr. 46.[5]   Relying upon the testimony of the VE, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing his past work as a psychologist and college professor.    Tr. 47. Alternatively, the ALJ found that Plaintiff can perform other jobs to which he can make a vocational adjustment, such as interviewer, caseworker, social services aide and intake counselor.   Tr. 47-49.   The ALJ, therefore, concluded that Plaintiff has not been under a disability from November 17, 2010 through the date of the decision. Tr. 49-50.

On February 25, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.   Tr. 1-7.   Accordingly, the ALJ's October 2, 2014 decision is

---

substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] Not at issue here, the ALJ also considered and determined that Plaintiff's impairments do not rise to the level of severity required to meet a listing.   Tr. 46-47, citing to 20 C.F.R. Part 404, Subpart P, Appendix 1.

the final decision of the Commissioner. Plaintiff filed a Complaint in this Court on April 21, 2016, and this matter is now ripe for review. Doc. 1.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390

(1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to

assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. Whether the ALJ properly accorded little weight to the opinions of Plaintiff's treating physician, Kenneth Galang, M.D.

Plaintiff first argues the ALJ failed to apply the correct legal standards to the opinions of Plaintiff's treating physician, Kenneth Galang, M.D. Doc. 15 at 11. The Commissioner responds that the ALJ properly evaluated Dr. Galang's opinions, and substantial evidence supports the weight the ALJ gave to them. Doc. 18 at 5-9. The Court recommends the ALJ provided good cause for giving little weight to Dr. Galang's opinions. While only two opinions of Dr. Galang are at issue here – one from March 2011 (Tr. 420) and another from January 2013 (Tr. 491-94) – the record shows Dr. Galang treated Plaintiff from early 2011 through mid-2014, and a summary of these records is instructive to the Court's analysis.

The record shows Dr. Galang first treated Plaintiff for complaints of low back pain on January 19, 2011. Tr. 408. During that visit, Plaintiff reported experiencing back pain that switches from side to side and awakens him at night. *Id.* He told Dr. Galang that he had been in pain for years,[6] and the pain limited his

---

[6] Indeed, Dr. Galang's treatment record shows Plaintiff was diagnosed in 1974. *See, e.g.,* Tr. 408.

activity and affected him while driving and with increased activity. *Id.* Plaintiff's history of chronic back pain had been treated with injections, massage, decompression and an inversion table, and he reported the massage and decompression therapy helped his pain. *Id.* He has a history of arthritis. *Id.* Plaintiff was taking medication for his pain (Tramadol, Klonopin, Soma and Vicodin), and reported his pain intensity was 8/10 without medication and 5/10 with medication. *Id.* On examination, Plaintiff's gait and station were normal, as were his motion stability and strength. Tr. 410. Dr. Galang reported Plaintiff's spinal curvature, straight leg raising test, back range of motion and back exam to be abnormal, noting a decreased range of motion and reports of spasms in Plaintiff's lower spine and bilateral sciatica. *Id.* Dr. Galang diagnosed Plaintiff with disc degeneration, lumbago and sciatica, noting that Plaintiff's long term use of medications was necessary. Tr. 411. Dr. Galang further reported that Plaintiff was told he needed surgery but did not want to go through with it and understood it would not guarantee a pain reduction. *Id.* The physician's treatment plan was to have Plaintiff continue with his prior prescriptions except for a decrease in his dosage of hydrocodone-acetaminophen, continue with his home exercise program and return in four weeks. *Id.* Plaintiff next saw Dr. Galang on February 16, 2011, during which he reported his back pain was controlled with his medication regimen, and he was using his inversion table and heating pad. Tr. 412. Otherwise, there were no changes from the prior visit, and Plaintiff was told to continue his home exercise program and return in eight weeks. Tr. 412-16.

Plaintiff returned on March 9, 2011, during which he reported to Dr. Galang that he was finding it more difficult to tend to his job, which required his staying in one position for a long period of time. Tr. 417. Dr. Galang further noted that Plaintiff was not able to tolerate sitting or standing for more than about 15 minutes at a time, and at times throughout the day had to lay down to take the pressure off his back. Tr. 420. In the first of his opinions at issue here, Dr. Galang further opined,

> [u]nfortunately, I don't feel [Plaintiff] has the ability to continue his practice as a psychologist. He has had all reasonable treatment options for the back. Although surgery has been discussed, he knows that no one can guarantee relief and he does not want to gamble that his pain may get worse.

*Id.* (the "March 2011 Opinion"). Dr. Galang recommended that Plaintiff return in eight weeks. *Id.*

Plaintiff returned to see Dr. Galang on April 15, 2011. Tr. 421. There were no changes of note from Plaintiff's previous visit, and again Dr. Galang noted Plaintiff's intolerance for sitting more than fifteen minutes at a time and opined that Plaintiff could not continue his practice as a psychologist. Tr. 421-25. Plaintiff continued to see Dr. Galang on June 20, 2011, August 5, 2011 and August 26, 2011. Tr. 426-40. There were no significant changes to Dr. Galang's examination and treatment notes from prior visits, except that in his notes of the August 26, 2011 visit, Dr. Galang reported Plaintiff's pain was under control and he was able to carry out his activities of daily living ("ADLs"). Tr. 438.

Plaintiff again saw Dr. Galang on October 28, 2011 for an MRI review, in which Dr. Galang stated revealed worsening discs at L2-L3. Tr. 441, 43. As in Dr. Galang's treatment notes of the prior visit on August 26, 2011, however, he noted that Plaintiff's pain was under control and he was able to carry out his activities of daily living. Tr. 442. Plaintiff reported no side effects with his medication regimen, and Dr. Galang made no changes to Plaintiff's treatment plan other than for Plaintiff to consider taking glucosamine sulfate. Tr. 441, 443.

In a visit on December 19, 2011, Plaintiff reported an increase in his pain level from the prior visits – 10/10 without his medications and 6-7/10 with them. Tr. 445. Nonetheless, Plaintiff stated he was sleeping well at night with his sleep medication and denied side effects. *Id.* Dr. Galang again noted that that Plaintiff's pain was under control and he was able to carry out his activities of daily living. Tr. 447. In Plaintiff's next visit on February 13, 2012, he reported increased pain in his left lower back but denied any new injury or trauma. Tr. 450. His pain level was the same as the prior visit, and Plaintiff was able to carry on his activities of daily living. Tr. 450, 452. Otherwise, this record was substantially similar to Plaintiff's prior records of treatment. *See* Tr. 450-54. Plaintiff next saw Dr. Galang on April 13, 2012 for a follow-up visit. Tr. 484. He reported his pain level had stayed the same since his last visit, he was sleeping well at night with his medication, and he had no side effects. *Id.* The record indicates Plaintiff saw Dr. Lin, but was not ready for injections yet, and that Plaintiff also was seeing a chiropractor periodically. *Id.* Dr. Galang noted that Dr. Lin recommended conservative treatment. Tr. 485.

The notes from Plaintiff's June 4, 2012 visit were unchanged. Tr. 670-71. On July 30, 2012, Plaintiff noted he was not sleeping well, even with his medications, but he reported his pain level the same as before and reported some side effects of feeling "spacey" and hypotensive from medications. Tr. 667-68. Otherwise, Dr. Galang noted Plaintiff was able to carry out his ADLs, and he prescribed Flexeril for Plaintiff's muscle spasms. *Id.* Plaintiff's visit on September 24, 2012 was unchanged. Tr. 664-65. His pain level was the same and he still was not sleeping well at night, but he denied other side effects of his medications, and he was able to carry out his ADLs. *Id.* In a November 19, 2012 visit, Plaintiff reported that his pain level had increased since his last visit, particularly in lower left quadrant of his back, but at the time he was not taking his medications because of cold symptoms. Tr. 661. Plaintiff also reported that he able to go through stretches of days without hydrocodone, and Dr. Galang noted Plaintiff's ADLs were normal. Tr. 662

Plaintiff saw Dr. Galang on several more occasions in 2013. In the January 14, 2013 visit, Plaintiff reported that since his last visit, his pain level had increased on the left side of his back and sometimes also his right side; he was not sleeping well and woke up with considerable pain; and his pain flared with prolonged sitting. Tr. 658. Although Plaintiff still was seeing three to five patients per week, he was limited because the prolonged sitting aggravated his back. *Id.* On the other hand, Plaintiff reported his pain was under control and he was able to carry out his activities of daily living. Tr. 659. The treatment notes from the visits in March and April 2013 generally were unchanged. Tr. 652-54, 655-57. In his June 3, 2013 visit,

Plaintiff reported increased pain in his lower back and, for the first time, also pain in his right knee, the latter for which another physician recommended arthroscopic surgery, but Plaintiff preferred conservative management. Tr. 649. Otherwise, the note from this the visit was generally the same as before. Tr. 649-51. Plaintiff's visit in late July 2013 showed his right knee pain was due to a torn meniscus, and he was wearing a brace; otherwise it was generally the same as previous visits. Tr. 646-48. During a follow-up visit in late September 2013, Plaintiff reported his lower back pain was the same since his last visit; and, other than that his right knee pain had increased, he generally reported no other changes. Tr. 643-45. His November 2013 visit was generally the same. Tr. 640-42.

On January 14, 2013, Plaintiff reported a slight increase in pain since his last visit; otherwise, his condition was generally unchanged, including his ability to perform activities of daily living. Tr. 637-39. That same date, Dr. Galang completed an assessment of Plaintiff's functional abilities based on questions on a form provided to him by Plaintiff's counsel (the "January 2013 Opinion"), the second opinion at issue here. Tr. 491-94. Dr. Galang checked "no" to the question whether as of November 2010 he believed that Plaintiff could have returned to his full time position as a psychologist and "yes" to the question whether he would experience an increase or exacerbation of his lower back pain should he return to "full time competitive employment" or increase his part-time schedule hours. Tr. 492. Dr. Galang opined that Plaintiff could work no more than 2-3 hours a day, 3-5 days per week, as tolerated, and cited as the reason Plaintiff's "multilevel disc disease with

documented worsening over time as seen on MRIs." Tr. 493. He further opined that even light work with a sit/stand opinion would likely create "significant exacerbation of pain." *Id.* Dr. Galang based his opinions on personal knowledge of Plaintiff's medical condition and Plaintiff's medical records from November 2010 through the date of the assessment. Tr. 494. There are also two additional visits to Dr. Galang in the record – on March 10, 2014 (Tr. 634-36) and May 5, 2014 (Tr. 631-33) – but in each of these visits there were no significant changes from the prior visits.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th

Cir. 2004).  Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown."  *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).  "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).  Moreover, there is no "rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection" that leaves this Court with insufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole.  *Dyer,* 395 F.3d at 1211.

In her decision, the ALJ discussed in detail the treatment records from Dr. Galang and Plaintiff's other treatment providers.  Tr. 43-45.  The ALJ also discussed Plaintiff's activities gleaned from Plaintiff's testimony, the ALJ's observation and other records, noting that Plaintiff lives alone, takes care of himself, has an active driver's license and typically drives every day.  Tr. 42.  His activities include running errands and seeing five to seven patients per week, performing light housekeeping and cleaning, preparing simple meals, using a computer daily throughout the day for about an hour in total (broken up throughout the day), occasional going to church, watching television and reading.  Tr. 42-43.  Plaintiff

reported his pain was stable on his current medication regimen but was losing strength and flexibility and having increased spasms. Tr. 43. Plaintiff does light stretching and pool therapy for exercise. *Id.*

In addition to the records from Dr. Galang, the ALJ discussed Plaintiff's prior history and treatment for reported lumbar spinal degeneration with lumbago and intermittent radiating pains from 2010 to 2011 with Dr. Matthew Riffle, M.D. and Dr. Debra Roggow, D.O. *Id.* Although Plaintiff reported worsening radiating lower back pain, examinations showed normal gait and station, no decreased range of motion, and normal muscle strength. *Id.*

The ALJ also reviewed and considered Plaintiff's ongoing chiropractic treatment on a fairly regular basis from 2010 through the date of the opinion, noting that in late 2011 Plaintiff continued to report significant back pain and mild to moderate tenderness was seen and range of motion was restricted. *Id.* On the other hand, Plaintiff continued to receive manipulation and massage therapies and generally reported relief from these therapies. *Id.* In September 2013, Plaintiff attended a seminar in San Diego for two weeks and reported using a cane to get around and was very uncomfortable. *Id.* The ALJ discussed additional chiropractic records from 2013 and 2014 in which Plaintiff consistently reported no radiating pains in his legs, but that his pain was aggravated with activity.

The ALJ further discussed examinations from Plaintiff's primary care physician from mid to late 2011 in which there were no significant clinical evidence of musculoskeletal difficulties. *Id.* These records showed that in late June 2011,

Plaintiff reported feeling well with only minor complaints, and his examination showed normal muscle strength and tone, gain, sensory, and neurological function. *Id.*

The ALJ also reviewed the results of Plaintiff's MRI of the lumbar spine from August 2011, which showed mild disc bulging at multiple levels, and an MRI of his left hip, which was unremarkable. *Id.* There were no changes to Plaintiff reports and examination in January 2012, and notes from May 2013 showed normal gait, strength, reflexes and sensory function. *Id.* Further, Plaintiff's upper and lower extremity strength and tone appeared normal. *Id.*

Finally, the ALJ discussed Plaintiff's evaluation at Lee Neurosurgery in December 2012 by Dr. Dean Lin, M.D., in which his examination of Plaintiff revealed a normal gait and muscle strength, normal range of motion in all extremities and the cervical and lumbar spines, unremarkable reflexes and negative straight leg raises. Tr. 44, 687-91. Dr. Lin noted diminished sensation in Plaintiff's right L4 area of his lumbar spine, yet he continued to recommend nonsurgical remedies to Plaintiff. *Id.* Another lumbar spinal MRI in March 2013 showed broad based disc bulging and mild foraminal narrowing, but no significant nerve impingement. Tr. 44, 512-16. An MRI of Plaintiff's right knee in May 2013 showed a meniscal tear and mild to moderate degenerative joint disease. Tr. 44, 517-23.

With respect to the March 2011 and January 2013 opinions of Dr. Galang at issue here, the ALJ stated:

> As for the opinion evidence, in [March] 2011, Dr. Galang found that [Plaintiff] could not tolerate sitting for more than fifteen minutes at a

time and would be unable to continue his practice as a psychologist. This opinion is given little weight as it is not supported by [Plaintiff's] daily activities or other observation. Additionally, that [Plaintiff] would be unable to continue his practice as a psychologist is pure speculation on the part of Dr. Galang as he is not a [VE]. Dr. Galang opined in January 2013 that [Plaintiff] would be unable to work for more than three hours daily and would be unable to engage in even simple light work due to his spinal condition (B10F). [T]his opinion is also given little weight as it is not supported by substantial objective findings, diagnostic imaging, or physical examination.

Tr. 46.

Plaintiff argues that the ALJ erred in assessing these opinions, which Plaintiff contends support a finding of disability. Doc. 15 at 12. Plaintiff asserts that the ALJ's reasons for rejecting Dr. Galang's opinions are conclusory and not based on the proper legal standards. *Id.* at 13. Plaintiff notes that the ALJ failed to discuss, for example, how Dr. Galang's opinions were inconsistent with Plaintiff's daily activities, or what was the "other observation" to which the ALJ was referring. *Id.* He further argues that the ALJ's according little weight to Dr. Galang's opinion that Plaintiff would be unable to continue his practice as a psychologist was not supported by the requisite good cause. *Id.* On the contrary, the Commissioner asserts that the ALJ provided good reasons, supported by substantial evidence, for the weight she gave to the medical opinions of Dr. Galang, and the Court is in agreement with this assertion. Doc. 18 at 7.

Here, the Court recommends that the ALJ properly articulated her reasons for discounting the weight accorded to Galang's opinions, in part because they were not supported by Plaintiff's daily activities and the ALJ's own observations of Plaintiff at the hearing. The ALJ discussed Plaintiff's activities, such as performing home

exercising, walking and using a pool for exercise, travelling by plane cross-country, sitting through the hour-long administrative hearing and only needing to stand once, driving, performing household chores and taking care of his personal needs. Tr. 43-46. As noted, the ALJ may discount the weight accorded to a treating physician if good cause is shown. *Castle*, 557 F. App'x at 854 (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo*, 955 F. Supp. at 1462. Good cause exists if evidence supports a contrary finding. *See Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Here, the ALJ discounted Dr. Galang's opinions as inconsistent with "substantial objective findings, diagnostic imaging, or physical examination" in the record. Tr. 46.

Moreover, as the Commissioner argues, Dr. Galang's March 2011 opinion that he did not feel Plaintiff had the ability to continue his practice as a psychologist was not a medical opinion but instead an opinion on an administrative issue reserved to the Commissioner. Doc. 18 at 7. The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Opinions on some issues, such as whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would

direct the determination or decision of disability." *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* SSR 96-5p; *Hutchinson v. Astrue*, 408 F. App'x 324, 328 (11th Cir. 2011). According, here the ALJ was not required to give "good reasons" for discounting Dr. Galang's opinion that Plaintiff could no longer work as a psychologist.

In addition, also as asserted by the Commissioner, in his January 2013 opinion, Dr. Galang completed his assessment by checking off boxes on a form questionnaire. Doc. 18 at 8; Tr. 46, 492-93. Form questionnaires or so-called "checklist" opinions such as that completed by Dr. Galang generally are disfavored. *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

Finally, because the ALJ provided a detailed analysis of Plaintiff's medical records to support her decision, the Court is able to conclude from the ALJ's decision that she did not broadly reject Dr. Galang's medical opinions but rather considered Plaintiff's medical condition as a whole. The ALJ's clear discussion of Plaintiff's medical records supported by substantial evidence distinguishes this case from *Winschel*, in which the Eleventh Circuit ordered the ALJ to consider and explain the weight accorded to the medical opinions because the ALJ did not mention the treating

physicians' medical opinions or discuss pertinent elements of the examining physicians' medical opinions. *Winschel*, 631 F.3d at 1179. In contrast, here the ALJ's in-depth discussion of Plaintiff's medical records provide substantial evidence for discounting Dr. Galang's opinions, including repeated examinations showing Plaintiff had normal gait and station, normal muscle strength, MRIs with only mild disc protrusion and no significant nerve impingement. Tr. 43-44. As a result, the Court recommends that the ALJ appropriately articulated good cause to discount the weight accorded to Dr. Galang's assessments, and Plaintiff has failed to show error in the legal standards the ALJ employed. *See Winschel*, 631 F.3d at 1179.

> b.    *Whether the ALJ applied the proper legal standards in finding Plaintiff could perform his past relevant work*

As noted, the ALJ found at step two of the sequential evaluation process that Plaintiff did not have a severe impairment or combination of impairments.[7] Tr. 41-42. As such, the ALJ could have ended her analysis there and found that Plaintiff had not met his burden that he was disabled. *See Bowen*, 482 U.S. at 146 (noting the claimant bears the burden of proving the existence of a severe impairment). Instead, the ALJ assumed for the sake of argument that Plaintiff's back impairment was severe, and found Plaintiff had the RFC to perform a reduced range of light work. Tr. 46. Based on this RFC, the ALJ found that Plaintiff still would be capable of performing his past relevant work as a psychologist and college professor. Tr. 47.

Step four of the sequential evaluation process requires the ALJ to determine

---

[7] Plaintiff did not challenge this determination; thus this issue is waived. *Access Now*, 385 F.3d at 1330.

whether the Plaintiff's RFC allows him to perform any of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). Plaintiff bears the burden of showing that his past work experience is not past relevant work. *Barnes*, 932 F.2d at 1359; *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990)). The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite his impairment. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). To support a conclusion that the claimant is able to return to his past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of his impairments. *See Lucas*, 918 F.2d at 1574. An ALJ may consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2). "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quotation marks omitted); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted). While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record. *Crawford*, 363 F.3d at 1161.

Plaintiff asserts that the hypothetical questions posed to the VE in this case were incomplete because they did not properly account for the limitations opined by

Dr. Galang.  Doc. 15 at 14-15.  Accordingly, Plaintiff asserts the VE's testimony did not constitute substantial evidence on which the ALJ could rely.  *Id.* at 15.  Because the Court already has recommended that substantial evidence supported the ALJ's decision to afford little weight to Dr. Galang's opinions that Plaintiff could not work, the ALJ was not required to include the limitations in those opinions in her hypothetical questions to the VE.  *See McGill v. Comm'r Soc. Sec.,* ---F. App'x ---, 2017 WL 957186, at *3 (11th Cir. Mar. 13, 2017) (citing *Crawford*, 363 F.3d at 1161 for its holding that the "ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."); *Wilson*, 284 F.3d at 1227; *Graham v. Bowen*, 790 F.2d 1527, 1576 (11th Cir. 1986).  Accordingly, the undersigned recommends that substantial evidence supports the ALJ's finding that Plaintiff can perform his past relevant work.

> c.  *Whether substantial evidence supports the ALJ's finding that there are other jobs available in significant numbers in the national economy Plaintiff can perform*

Alternatively, the ALJ found that even if he was prevented by his impairments from performing his past relevant work, Plaintiff still would be capable of performing other jobs existing in the national economy based on work skills he acquired as a psychologist and college professor that would be transferrable to other occupations such as interviewer, caseworker, social service aide and intake counselor with "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  Tr. 49.  Again, the ALJ relied on the VE's testimony to make this determination.  *Id.*, Tr. 89-100.  The ALJ explained:

The [VE] testified that [Plaintiff's] past relevant work as psychologist and college professor was skilled with a specific vocational preparation (SVP) code of 8 and required the following skills: interviewing, evaluation and treatment, observation, academic or psychological test administration, academic skills, instruction, preparing lecture & curriculum, medical terminology, knowledge of medications.

…

The [VE] was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and [RFC] as [Plaintiff], and which require skills acquired in [Plaintiff's] past relevant work but no additional skills. The [VE] responded and testified that representative occupations such an individual could perform include:

1. Interviewer, DOT #205.362-014, which is performed at the sedentary exertional level, has an SVP of 5, and of which there are 130,000 jobs in the national economy and 7,000 in the State;

2. Caseworker, DOT #195.107-010, which is performed at the sedentary exertional level, has an SVP of 7, and of which there are 260,000 jobs in the national economy and 7,500 in the State;

3. Social Services Aide, DOT #195.367-034, which is performed at the light exertional level, has an SVP of 6, and of which there are 350,000 jobs in the national economy and 13,000 in the State; and

4. Intake Counselor, DOT #195.107-014, which is performed at the light exertional level, has an SVP of 7 and of which there are 274,000 jobs in the national economy and 8,300 in the State.

Tr. 48-49.

Plaintiff argues that the ALJ erred in her determination that Plaintiff had transferable skills because the VE testified that there would be more than a mild but less than a moderate vocational adjustment to these occupations, contrary to the guidelines for individuals of age 55 or older, considered to be "advanced age," such as Plaintiff.   Doc. 15 at 15-18, Tr. 97-98.   The Commissioner responds that Plaintiff

failed to establish error in either the VE's testimony or the ALJ's finding that Plaintiff

had transferable skills based on his age.   Doc. 18 at 11-12.   The Commissioner

further points out that any issue regarding vocational adjustment to other jobs is

moot, as the ALJ alternatively found that Plaintiff was able to perform his past

relevant jobs.   *Id.* at 12.

At step five of the sequential evaluation process, the burden shifts to the

Commissioner to produce evidence that there is other work available in significant

numbers in the national economy that the claimant can perform given his RFC.

*Jones*, 190 F.3d at 1228; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).   The

regulations discuss how the agency determines whether skills are transferrable:

> (d) Skills that can be used in other work (transferability)—
>
> (1) What we mean by transferable skills. We consider you to have
> skills that can be used in other jobs, when the skilled or semi-
> skilled work activities you did in past work can be used to meet
> the requirements of skilled or semi-skilled work activities of other
> jobs or kinds of work. This depends largely on the similarity of
> occupationally significant work activities among different jobs.
>
> (2) How we determine skills that can be transferred to other jobs.
> Transferability is most probable and meaningful among jobs in
> which—
>
> (i) The same or a lesser degree of skill is required;
>
> (ii) The same or similar tools and machines are used; and
>
> (iii) The same or similar raw materials, products, processes, or
> services are involved.

20 C.F.R. § 404.1568(d).   The regulations further instruct there are "degrees of

transferability of skills ranging from very close similarities to remote and incidental

similarities among jobs. A complete similarity of all three factors is not necessary for transferability." *Id.* § 1568(d)(3). Relevant here, the regulations specifically address transferability of skills for persons of advanced age and an RFC of light work:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work *unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s)*. We will decide if you have transferable skills as follows. . . . If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work *only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. . .*

*Id.* § 404.1568(d)(4) (emphasis added).

Plaintiff argues that the VE's testimony that that there would be more than a mild change and less than a moderate adjustment to the other jobs cited is inconsistent with (e.g., a higher standard than that contemplated by) the Medical Vocational Guidelines permitting "very little, if any, vocational adjustment," and thus the ALJ applied the incorrect legal standard. Doc. 15 at 16, citing Rule 202.00(f), Pt. 404, Subpt. P, App. 2. *See id.* Plaintiff cites to no case law, statutory interpretation or other regulation that provides guidance for his argument.

Plaintiff was 60 years old on the alleged onset date and would be considered a person of advanced age. 20 C.F.R. § 404.1568(d). If a person is of advanced age and is limited to sedentary or light work, as was Plaintiff in this case, the Commissioner cannot find that the person can make an adjustment to other work unless he has

skills that can transfer to other skilled or semiskilled work. *Id.* § 404.1568(d)(4). If the individual has transferable skills, the skilled or semiskilled sedentary work must be so similar to the individual's previous work that very little, if any, vocational adjustment would have to be made in terms of tools, work processes, work settings or the industry. *Id.*

During the questioning by the ALJ, the VE testified that Plaintiff had acquired work skills in his past professions as a college professor and psychologist—such as evaluating and treating, observations, test administration and interpretation, academic skills, medical terminology and knowledge of medication—that were transferable. Tr. 90. Using the hypothetical individual comprising all of Plaintiff's impairments, the ALJ requested the VE to identify jobs in the State of Florida and regional economy that an individual could perform using these transferable skills, two at the light exertional level and two at the sedentary level. Tr. 91. The VE explained these work skills would transfer to an interviewer, caseworker (each sedentary positions), social services aide and intake counselor (the latter two performed at the light exertional level). Tr. 91-92. Plaintiff's counsel then questioned the VE whether there would be a vocational adjustment that would have to be made in terms of tools, work processes and work settings from Plaintiff's past relevant work to each of these jobs, and the VE answered in the affirmative. Tr. 97-98. The ALJ then questioned the VE about the degree of vocational adjustment that would need to be made, asking whether they would be little, or minimal. Tr. 98. The VE responded, and the following exchange ensued:

ALJ: How much of a vocational adjustment would that be given a persons, you know, degree, intelligence and how much a vocational, little? Minimum?

VE: But certainly be a change in work settings and processes. So, are my choices -- I would say, more than mild.

ALJ: More than mild, less than moderate or?

VE: Less than moderate.

ALJ: More than mild and what is mild defined to? Like is there like a day -- mild vocational adjustment would be like how many days of training to really get the gist of the job?

VE: Oh, well, any new job for a professional is going to take up to six months to be comfortable with all the new material but in terms of being able to work at the job, I mean, that should be able to be done within, you know, a week.

ALJ: That's like the same as competency? Competency at the job at least week?

VE: Oh yes. Mm-hmm.

Tr. 98-99. When questioned by Plaintiff's attorney whether these jobs would fall within the regulations regarding transferability because of Plaintiff's age, the ALJ responded to the attorney and continued questioning the VE:

ALJ: Well, you know, let's be logical about this and let's take these cases -- and this is no indication of how I'm going to rule, Mr. Dalrymple. But certainly, it does beg identification. Because as we look at interviewer, psychologists, that's what they do, they ask questions, they get responses, they ponder things. Caseworkers, same thing. You're doing the files, even more so, you're writing medical notes. To me, it's just logical. Social services aide. This all seems to me within the same field, am I wrong?

VE: Well, these are largely in the social services field where psychologist is in the professional industries.

ALJ: So, is the psychologist higher up in this field?

VE: Yes.

ALJ: So, that's what I'm saying though. Being that he's so he's very intelligent, incredible expertise, incredible resume, so that is encompassed in what he does.

Tr. 99-100.

Based on the above exchange and the above-cited legal authority that an ALJ may rely on the testimony of a VE when determining whether a claimant is able to engage in work in the national economy, the Court finds no error in the ALJ's determination. In response to the ALJ's hypothetical question comprising all of Plaintiff's impairments and the clarifying questions that followed, the VE testified that Plaintiff has the transferable skills to work as an interviewer, case worker, social services aide and intake counselor with more than mild but less than moderate adjustment, and should be comfortable doing these jobs within one week and with all new material within six months. Tr. 97-99. The ALJ was permitted to rely on this testimony and properly found that Plaintiff has transferable skills to these occupations, which would require little, if any, vocational adjustment. *See Huhn v. Astrue*, No. 5:08-cv-16-OC-GRJ, 2009 WL 804646, *17 (M.D Fla. 2009) (similarly finding that the ALJ did not err based on the testimony of the VE that the job tools and work processes of proposed other work would not be a "significant change" from Plaintiff's past relevant work).

### d. Whether the ALJ properly evaluated Plaintiff's credibility concerning his allegations of pain and limitations

Plaintiff's final argument is that the ALJ failed to properly evaluate Plaintiff's allegations of pain and limitations. Doc. 15 at 18-19. Plaintiff's argument here is related to his earlier argument that the ALJ failed to apply the correct legal standards concerning Plaintiff's treating physician, Dr. Galang. *Id.* at 19. Because the Court has recommended that the ALJ properly considered Dr. Galang's opinions, likewise the Court recommends there is no error in the ALJ's failure to consider evidence that she properly found to have little weight. Moreover, the ALJ properly applied the appropriate legal standards.

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

In this case, the ALJ comprehensively considered Plaintiff's subjective complaints and the objective medical evidence, along with Plaintiff's daily activities, and found after a deliberate review and explanation that Plaintiff subjective pain complaints were not fully credible.   She further determined:

> the record supports this inconsistency of subjective complaints versus objective findings on examination as comprehensively discussed in the body of this decision. The objective findings on examination support good motor strength, intact neurological findings and no evidence of atrophy. Although [Plaintiff's] subjective complaints may have some merit, the totality of the supporting medical evidence does not provide clinical correlation of his symptomology to the degree of debility alleged with objective findings on examination. Consequently, there is no legally supportable basis for disability and preclusion of all work activity as within the meaning of the regulations.

Tr. 45.   The ALJ carefully and thoroughly considered all Plaintiff's medical evidence, including the opinions and records of Dr. Galang.   Tr. 41-46.   With respect to the opinions of Dr. Galang, the ALJ found that they should be given little weight because they were not supported by objective findings, diagnostic imaging or physical examination.   Tr. 46.   The Court has recommended that the ALJ properly evaluated and articulated her reasons to discount Dr. Galang's opinions, and substantial evidence supports her decision.   Likewise, for the reasons discussed in the decision of the ALJ, substantial evidence supports the ALJ's decision for discounting Plaintiff's credibility as to his subjective complaints.   Tr. 41-46.

## V.    CONCLUSION

Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the

Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.     The decision of the Commissioner be **AFFIRMED**.

2.     The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 10th day of August, 2017.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record